IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INQUISIENT INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-900 (CFC) |
| | ) | |
| SERVICENOW, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPENING BRIEF IN SUPPORT OF DEFENDANT'S
<u>MOTION TO DISMISS THE COMPLAINT</u>**

OF COUNSEL:

Diane M. Doolittle
Kevin P.B. Johnson
Ray Zado
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Marissa R. Ducca
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538 8000

Jodie Cheng
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600

September 12, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendant*

## **TABLE OF CONTENTS**

**Page**

I.    NATURE AND STAGE OF THE PROCEEDINGS....................................1

II.   SUMMARY OF ARGUMENT.........................................................1

III.  STATEMENT OF FACTS..............................................................2

IV.   LEGAL STANDARD ...................................................................5

V.    ARGUMENT.............................................................................6

      A.    The Patents-in-Suit are Invalid Under 35 U.S.C. § 101......................6

            1.    Patent Eligibility Under 35 U.S.C. § 101 ..................................6

            2.    *Alice* Step One – Every Claim Of The Patents-in-Suit Is
                 Directed To An Abstract Idea .....................................7

            3.    *Alice* Step Two – Claims of the Patents-in-Suit Recite No
                 Inventive Concept ...................................................14

      B.    InQuisient Fails to Plausibly Plead Indirect Infringement................17

      C.    InQuisient Fails to Plausibly Plead Willful Infringement..................19

      D.    Any Amendment Would be Futile ....................................20

VI.   CONCLUSION............................................................................21

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    838 F.3d 1253 (Fed. Cir. 2016) ................................................................8, 9, 10

*Alice Corp. Pty. v. CLS Bank Int'l*,
    573 U.S. 208 (2014).....................................................................................*passim*

*Amarin Pharma, Inc. v. Hikma Pharms. USA Inc.*,
    578 F. Supp. 3d 642 (D. Del. 2022)...................................................................19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).............................................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................5

*Berkheimer v. HP Inc.*,
    890 F.3d 1369 (Fed. Cir. 2018) ....................................................................7, 13

*BSG Tech LLC v. Buyseasons, Inc.*,
    899 F.3d 1281 (Fed. Cir. 2018) ..................................................................*passim*

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632 (2015)...........................................................................................18

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l
Ass'n*,
    776 F.3d 1343 (Fed. Cir. 2014) ......................................................6, 13, 15, 16

*Davis v. Wells Fargo*,
    824 F.3d 333 (3d Cir. 2016) ...............................................................................5

*Deere & Co. v. AGCO Corp.*,
    No. 18-827-CFC, 2019 WL 668492 (D. Del. Feb. 19, 2019) .....................20, 21

*Dynamic Data Techs., LLC v. Amlogic Holdings Ltd.*,
    No. 19-1239-CFC, 2020 WL 4365809 (D. Del. July 30, 2020)........................20

*Elec. Power Grp., LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ....................................................................6, 14

## <u>TABLE OF AUTHORITIES</u>

*Epic IP LLC v. Backblaze, Inc.*,
  351 F. Supp. 3d 733 (D. Del. 2018)...................................................................12

*Helios Streaming, LLC v. Vudu, Inc.*,
  No. 19-1792-CFC, 2020 WL 3167641 (D. Del. June 15, 2020) .......................19

*In re TLI Commc'ns LLC Patent Litig.*,
  823 F.3d 607 (Fed. Cir. 2016) ...............................................................10, 14, 15

*In-Depth Test, LLC v. Maxim Integrated, Products, Inc.*,
  2018 WL 6617142 (D. Del. Dec. 18, 2018); D.I. 1-A.........................................7

*Intellectual Ventures I LLC v. Cap. One Bank (USA)*,
  792 F.3d 1363 (Fed. Cir. 2015) ........................................................................16

*Intellectual Ventures I LLC v. Cap. One Fin. Corp.*,
  850 F.3d 1332 (Fed. Cir. 2017) ........................................................................10

*Intellectual Ventures I LLC v. Erie Indemnity*
  850 F.3d 1315 (Fed. Cir. 2017) ..................................................................9, 15, 17

*Mgmt. Sci. Assocs., Inc. v. Datavant, Inc.*,
  510 F. Supp. 3d 238 (D. Del. 2020).................................................................7, 11

*Mortg. Application Techs., LLC v. MeridianLink, Inc.*,
  839 Fed. Appx. 520 (Fed. Cir. 2021).................................................................10

*Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.*,
  811 F.3d 1314 (Fed. Cir. 2016) ...................................................................10, 15

*OIP Techs., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) ........................................................................15

*PersonalWeb Techs. LLC v. Google LLC*,
  8 F.4th 1310 (Fed. Cir. 2021) .............................................................................5

*Realtime Data LLC v. Array Networks Inc.*,
  537 F. Supp. 3d 591 (D. Del.)............................................................................10

*RecogniCorp, LLC v. Nintendo Co.*,
  855 F.3d 1322 (Fed. Cir. 2017) ........................................................................14

## **TABLE OF AUTHORITIES**

*Software Rights Archive, LLC v. Facebook, Inc.*,
485 F. Supp. 3d 1096 (N.D. Cal. Sept. 9, 2020)..................................................11

*WhitServe LLC v. Donuts Inc.*,
390 F. Supp. 3d 571 (D. Del. 2019).......................................................................6

*ZapFraud, Inc. v. Barracuda Networks, Inc.*,
528 F. Supp. 3d 247 (D. Del. 2021)............................................................*passim*

**Statutes**

35 U.S.C. § 101 ................................................................................................*passim*

**Rules**

Fed. R. Civ. P. 12(b)(6)...............................................................................5

## I.     NATURE AND STAGE OF THE PROCEEDINGS

On July 5, 2022, Plaintiff InQuisient Inc. filed the complaint against ServiceNow, Inc., alleging infringement of three patents: U.S. Patent Nos. 7,979,468; 8,219,585; and 8,224,855 (collectively, the "Patents-in-Suit").  D.I. 1 ("Complaint" or "Compl.").  ServiceNow moves to dismiss the complaint because all three Patents-in-Suit are invalid as directed to ineligible subject matter under 35 U.S.C. § 101.  Further, InQuisient's claims for indirect infringement and willfulness-based enhanced damages should be dismissed for failure to plead that ServiceNow had knowledge of the alleged infringement.

## II.    SUMMARY OF ARGUMENT

1.     The claims of the Patents-in-Suit are invalid under 35 U.S.C. § 101. They are directed to no more than the abstract idea and functional results for organizing data using computerized databases, while providing no specific technique for achieving those results.   Rather than improving the functionality of any computer, the Patents-in-Suit describe using generic computer systems and database systems (including from Oracle and Microsoft) and methods that were conventional and well-known at the time of the alleged inventions.

2.     The Complaint's indirect infringement and willfulness claims are deficient because they fail to plead ServiceNow's knowledge of the Patents-in-Suit

and alleged infringement – both required for claims of indirect and willful infringement.

## III.   STATEMENT OF FACTS

Although InQuisient's Complaint alleges that ServiceNow's Now Platform product "practices one or more claims . . ., including at least claim 1" of the Patents-in-Suit, it does not assert—or even mention—any other patent claims.  Compl. ¶¶ 29, 51, 53, 72, 74, 90.  The Patents-in-Suit share the same inventor, title, and written description,[1] with the '855 and '585 patents being continuations of the '468 patent. *See id.* ¶¶ 17–19.  As the Complaint states, the Patents-in-Suit each claim a "database data dictionary."  *Id.* ¶ 4; *see also id.* ¶16.

The Patents-in-Suit claim "methods, systems and computer program products . . . for manipulating data sets," within a computerized data repository using various "modules," *e.g.*, "element module," "class module," and "attribute module," that identify, store, or retrieve data in a dataset.  D.I. 1-A at 1:57–59, 16:16–33.  *See also* Appendix B.  Representative claim 1 of each Patent-in-Suit is reproduced in Appendix A.  *See also infra*, pp. 7-8.

InQuisient's Complaint also seeks judgment that ServiceNow "has directly and/or indirectly infringe[d] one or more claims of the Patents-in-Suit."  Compl. at

---

[1]  All citations are to the '468 patent's written description unless expressly stated otherwise.

pages 29–30.  This is the only mention of alleged indirect infringement regarding the '585 or '855 patent.  *See id.*  As for the '468 patent, InQuisient alleges that ServiceNow "induc[es] its customers to purchase the Accused Product and/or by instructing, encouraging, implementing, and/or directing others how to use the Accused Product in ways that directly infringe the '468 Patent, including claim 1, through its educational and promotional materials, support activities, as well as its service and consulting activities."  *Id.* ¶ 32.  Nowhere in the Complaint does InQuisient allege any further facts to support indirect infringement of the '468 patent, including the requisite knowledge of the Patents-in-Suit.  *See id.*

Additionally, the Complaint's Prayer For Relief requests that "ServiceNow's infringement of the Patents-in-Suit be found willful and that the Court award treble damages."  Compl. at ¶¶ 29–30.  This is the only mention of willful infringement throughout the Complaint.  *See id.*

The Complaint references two letters purportedly sent from InQuisient to ServiceNow, dated June 1 and 21, 2022—neither of which InQuisient relies on for its claims of willful or induced infringement.  *Id.* ¶¶ 5–6.  Indeed, InQuisient does not allege that either letter provided ServiceNow notice of the Patents-in-Suit or contains any allegation of infringement, nor could it.  *Id.*  Rather, according to the Complaint, the June 1 letter "requested that ServiceNow provide access to a test instance of the Now Platform and a full database schema in an attempt to rule out

InQuisient's infringement concerns." *Id.* ¶ 5.  The June 21 letter merely "repeat[ed] [InQuisient's] request for a response." *Id.* ¶ 6.  Neither letter was attached to the Complaint; nor does InQuisient allege any facts regarding how or to whom the letters were sent, or whether ServiceNow actually received them. *See id.*

ServiceNow's counsel obtained the letters from InQuisient's counsel after this case was filed.  Cheng Decl. ¶¶ 2, 3.  The June 1 letter admits that InQuisient's infringement concerns were speculative and preliminary ("InQuisient is concerned that ServiceNow *may be* practicing the inventions"), that the information it had located about the NOW Platform was "*insufficient* to fully address these concerns," and that it could not determine whether ServiceNow infringed its patents ("we seek your cooperation in obtaining additional information that would allow us to determine whether ServiceNow's Now platform *is (or is not)* using InQuisient's patented techniques").  Ex. 1; Cheng Decl. ¶ 4.  In the June 21 letter, InQuisient does not even mention any patents, let alone state that it was asserting infringement.[2]  Ex. 2; Cheng Decl. ¶ 5.

---

[2]  The "unusual increase in activity on [InQuisient's] website from Santa Clara County" (Ex. 2) is irrelevant, because InQuisient does not allege that such activity is linked to ServiceNow or that its website provides notice of the Patents-in-Suit or the alleged infringement.

## IV.    LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The plausibility standard is not met unless the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id*.   When reviewing a motion to dismiss under Rule 12(b)(6), the court is "required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the nonmovant," but the court must "disregard legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements."   *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Iqbal*, 556 U.S. at 678.

The Federal Circuit and courts in this District have invalidated patents under § 101 at the pleadings stage.   *See, e.g.*, *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021) (The § 101 "inquiry may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law.") (internal quotation omitted);

*WhitServe LLC v. Donuts Inc.*, 390 F. Supp. 3d 571, 581 (D. Del. 2019) (granting § 101 motion where patented claims recited nothing more than generic computer components employed in a conventional manner and "neither the patent nor the complaint allege[d] any improvement in technology."). "[C]laim construction is not an inviolable prerequisite to a validity determination under § 101." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

## V.   ARGUMENT

### A.   The Patents-in-Suit are Invalid Under 35 U.S.C. § 101

#### 1.   Patent Eligibility Under 35 U.S.C. § 101

The Supreme Court set forth a two-part test for determining whether a patent recites ineligible subject matter under § 101. *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014). At step one, the court determines if the patented claims are "directed to" an abstract idea. *Id.* The first step considers the claim's overall "focus" and "character as a whole." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (quotation marks and citations omitted). If the claims are directed to an abstract idea under step one, the court proceeds to step two, which asks whether the claim elements, considered "both individually and 'as an ordered combination,'" recite an "inventive concept" that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [abstract idea] itself." *Alice*, 573 U.S. at 217–18. The inventive concept, however, cannot be either

an abstract idea in itself or a generic computer implementation. *Berkheimer v. HP Inc.*, 890 F.3d 1369, 1374 (Fed. Cir. 2018).

### 2.   *Alice* Step One – Every Claim Of The Patents-in-Suit Is Directed To An Abstract Idea

Under *Alice* step one, the overall focus and character of each of the claims of the Patents-in-Suit is directed to the abstract idea of storing, managing, indexing, and retrieving data sets based on metadata or descriptions of the data. *E.g.*, *supra*, Section III. That is, claim 1 of each of the Patents-in-Suit recites "manipulating data sets" using "a computerized system" with a "data repository" that "process[es], retrieve[s], and store[s] data" and metadata. *Id.* As InQuisient admits, the claimed data repository is simply a "relational database" (Compl. ¶¶ 38, 57, 78) that organizes or processes the data according to various "modules," including an "attribute module" ('468 patent), "element history module" ('855 patent), and "tuple module" ('585 patent). To that end, claim 1 of each Patent-in-Suit is representative of the other claims in each respective patent because "the only difference between claims is the form in which they are drafted." *Mgmt. Sci. Assocs., Inc. v. Datavant, Inc.*, 510 F. Supp. 3d 238, 245 (D. Del. 2020). The other claims, dependent claims, and continuation patents merely recite additional categories, or "modules," and combinations of types metadata; and, thus, all patented claims are "substantially similar and linked to the same abstract idea." *In-Depth Test, LLC v. Maxim Integrated, Products, Inc.*, 2018 WL 6617142, at *2 n.3 (D. Del. Dec. 18, 2018);

7

D.I. 1-A at claim 2 (adding a "state machine transition module" that "store[s] a transition from a first status to a second status"); claim 4 (requiring that the "type definition module defines a type include at least one of a boolean type, a picklist type, and a state machine type."). Thus, Patents-in-Suit are directed to nothing more than storing, organizing/processing, and retrieving data based on type(s) of metadata corresponding to the data. At best, the various recited modules merely describe groupings of metadata. *E.g.*, Appendix B; *supra*, Section III.

### (a)   Analogous Case Law Demonstrates The Patented Claims Are Abstract

Storing, processing/organizing, and retrieving data based on groupings of descriptive metadata and parameters, as recited by the claims, is routinely held to be an abstract idea. In assessing whether claims are directed to an abstract idea, the Federal Circuit considers prior *Alice* opinions as "substantial guidance in determining whether claims are unpatentable under the 'abstract idea' rubric." *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016).

In *BSG Tech LLC v. Buyseasons, Inc.*, the Federal Circuit considered claims directed to a "self-evolving generic index" for organizing information stored in a database. 899 F.3d 1281, 1283 (Fed. Cir. 2018). The Court held the claims were directed to the abstract idea of comparing data based on, *inter alia*, its historical usage. *Id.* at 1286. That is, the "focus" of the claims was "presenting summary

comparison information to users before [users] input data" into the database, which the court found was not necessarily rooted in computer technology.  *Id.*  Here, like in *BSG Tech*, the focus of the Patents-in-Suit is directed to organizing, storing, and retrieving data according to descriptive parameters, which is a concept that may— but need not necessarily—be implemented in computerized systems.

Similarly, in *Intellectual Ventures I LLC v. Erie Indemnity*, the patented claims "use[d] an index to locate desired information in a computer database," with many claims "directed expressly to building an index using XML tags."  850 F.3d 1315, 1325, 1327 (Fed. Cir. 2017).  The patent asserted that the claimed invention was distinguishable from prior art database searches that required users to sift through voluminous false hits to locate the desired data.  *Id.* at 1325.  Nonetheless, the Court affirmed the district court's holding that the patented claims were "drawn to the abstract idea of 'creating an index and using that index to search for and retrieve data.'"  *Id.* at 1327.  As the Federal Circuit explained, "[t]his type of activity, *i.e.*, organizing and accessing records through the creation of an index-searchable database, includes longstanding conduct that existed well before the advent of computers and the Internet."  *Id.*  The same is true of the claims here, which are not focused on "***how*** usage of the [various modules] alters the database in a way that leads to an improvement in the technology of computer databases."  *Id.* at 1328 (emphasis original).

9

Indeed, it is well established that claims for storing, organizing, or retrieving data according to various parameters or descriptive information are directed to abstract ideas. *See, e.g.*, *Intellectual Ventures I LLC v. Cap. One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (concluding that the subject patent was ineligible where "the patent claims are, at their core, directed to the abstract idea of collecting, displaying, and manipulating data"); *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (holding claims were directed to the abstract idea of classifying and storing digital images in an organized manner); *Affinity Labs*, 838 F.3d at 1258 (Fed. Cir. 2016) (holding patent "involv[ing] the conveyance and manipulation of information using wireless communication and computer technology" was directed to an abstract idea); *Mortg. Grader, Inc. v. First Choice Loan Serv. Inc.*, 811 F.3d 1314, 1324–25 (Fed. Cir. 2016) (claims reciting an "interface," "network," and a "database" are nevertheless directed to an abstract idea); *Mortg. Application Techs., LLC v. MeridianLink, Inc.*, 839 Fed. Appx. 520, 526 (Fed. Cir. 2021) ("information storage and exchange is an abstract idea even when it uses computers as a tool or is limited to a particular technological environment"). This Court's prior opinions further support a finding that the claims here are directed to an abstract idea. *See Realtime Data LLC v. Array Networks Inc.*, 537 F. Supp. 3d 591, 607 (D. Del. 2021) ("Claims directed to the manipulation of data are abstract absent additional features, because, information as such is an

intangible."); *Mgmt. Sci. Assocs*, 510 F. Supp. 3d at 245 (D. Del. 2020) ("The [subject] patent's claims are directed to the abstract idea of collecting, labeling, and manipulating data and do not contain any inventive concept.").[3]

### (b)   The Patented Claims Are Not Directed to a Technological Improvement

The claimed organization, storage, and retrieval of data is not directed to specific technique or improvement in computer technology.  For example, the Patents-in-Suit claim that metadata or descriptive parameters can be defined (or generated) by and stored according to certain categories, or "modules," but provides no specific technique to achieve that result.  That is, the Patents-in-Suit claim no specific technique to define, *e.g.*, an "attribute," "class," or a "tuple"; nor do they claim any specific improvement for "interrelating" one category of metadata to another category of metadata.  Devoid of any specific technique or improvement for organizing and relating categories of metadata, the Patents-in-Suit are directed to no more than the abstract idea of organizing and retrieving data according to metadata.

Similarly, the claims are not focused on how usage of the various modules alters the database in a way that leads to an improvement in the technology of computer databases.  The written description asserts that prior database systems "do

---

[3]  Other district courts analyzing similar claims involving the extracting and relating descriptive data have found them to be patent ineligible abstract ideas.  *See, e.g.*, *Software Rights Archive, LLC v. Facebook, Inc.*, 485 F. Supp. 3d 1096, 1103–1110 (N.D. Cal. Sept. 9, 2020).

not provide for inheritance and override behaviors, collaboration or state machine process enforcement, and/or element style normalization" and purports that the claimed invention improves upon prior art through the ability to "interrelate and manage dynamic data sets through process and collaboration and state machines." D.I. 1-A at 1:45-49. But the claims do not disclose any specific technique *e.g.*, interrelating and managing dynamic data sets over the prior art systems. Rather, the claims simply call for various modules within a data repository to store, manage, index, and/or retrieve data. *Supra*, pp. 9-10; Appendix B.

Even if accepted for this motion, InQuisient's allegations that the patented techniques move workflows "into innovative and new database structures"; "permit better management of data, database operations, and workflow"; "help normalize the data, which makes the data easier to manage and scale"; or "improve the structure, organization, operation and visualization of relational databases and further improve the manner workflows are implemented using databases" do not avoid abstraction. *See* Compl. ¶¶ 4, 5, 8. This is especially true because neither the Complaint nor the Patents-in-Suit disclose any specific technique for achieving these alleged benefits or improvements. In any event, alleged improvements or novelty do not save the Patents-in-Suit from abstractness, as courts have routinely held that a purportedly novel abstract idea is nonetheless abstract. *See, e.g.*, *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 751 (D. Del. 2018) ("the *Berkheimer* and *Aatrix* cases do not

stand for the proposition that a plaintiff can avoid dismissal simply by reciting in the complaint that the invention at issue is novel.").

### (c)    The Patents-in-Suit Claim Processes that Have Been and Are Performed By Human Mental Processes

The claims are directed to an abstract idea that has long been performed by humans, and limiting the claims to a computerized database system does not save them from abstractness.  Like the claims in *BSG Tech.*, *Erie Indemnity*, and the aforementioned cases, (*supra* at Section V.A.2(a))*,* organizing, storing, and retrieving data using metadata and descriptive parameters are conventional and well-known practices that can (and have been) performed by humans.  "The concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions."  *Content Extraction*, 776 F.3d at 1347.  A generic process that performs human mental processes with conventional technology is not patent eligible.  *See, e.g.*, *BSG Tech*, 899 F.3d at 1286.

*       *       *

Therefore, the Patents-in-Suit fail step one because, like scores of similarly abstract claims held invalid, "[t]he advance they purport to make is a process of gathering and analyzing information of a specified content, then displaying the results, and not any particular assertedly inventive technology for performing those functions. They are therefore directed to an abstract idea."  *Elec. Power*, 830 F.3d at 1354.

13

### 3. *Alice* Step Two – Claims of the Patents-in-Suit Recite No Inventive Concept

Under *Alice* step two, the claims do not recite any inventive concept.  "To save a patent at step two, an inventive concept must be evident in the claims." *RecogniCorp, LLC v. Nintendo Co.*, 855 F.3d 1322, 1327 (Fed. Cir. 2017).  The inventive concept must provide "significantly more" than the abstract idea itself. *BSG Tech*, 899 F.3d at 1289–90.  It is well-settled that mere recitation of concrete, tangible components is insufficient to confer patent eligibility to an otherwise abstract idea.  *TLI*, 823 F.3d at 613.

### (a) The Claims Recite Well-Understood, Conventional Elements

As acknowledged in the Patents-in-Suit, storing, organizing, managing, indexing, and/or retrieving data according to metadata or parameters of that data was well-known and conventional in database systems prior to the claimed inventions. *See* D.I. 1-A at 1:27-30 ("The conventional system's dedicated code and user interface in some respects manipulate the data that the conventional system's application stores and retrieves during operation."); *see also id.* at 1:30-34.

The Federal Circuit has made clear that narrowing patent claims to a specific context or environment—here, a database —does not transform an abstract idea into patent eligible subject matter.  *See, e.g.*, *BSG Tech*, 899 F.3d at 1291 (invalidating patents under § 101 where patentee "narrowed its claims to specific database

14

structures"); *TLI*, 823 F.3d at 613 (claims abstract despite being limited to mobile telephone system); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1362–63 (Fed. Cir. 2015) (price optimization in e-commerce setting).  Rather, "[f]or the role of a computer in a computer-implemented invention to be deemed meaningful in the context of [the *Alice* step two] analysis, it must involve more than performance of well-understood, routine, and conventional activities previously known to the industry." *Content Extraction*, 776 F.3d at 1347–48 (alterations and quotation marks omitted).  But because all the claims recited here are well-understood, routine, and conventional relational database activities, that standard is not met.

Moreover, the Patents-in-Suit are not availed by applying these well-understood, routine, and conventional activities to generic components.  As the Federal Circuit established, applying existing processes to generic components and hardware cannot inject any inventive concept to an otherwise abstract idea.  *E.g., Mortg. Grader, Inc.*, 811 F.3d at 1324–25 (invalidating claims reciting a "database" that stores input information that is searched); *Erie Indemnity*, 850 F.3d at 1329 (invalidating claims reciting methods for creating and searching a "database").

For example, in *Content Extraction*, the Federal Circuit found that claims directed to the abstract idea of collecting, recognizing, and storing data did not recite an inventive concept sufficient to transform the abstract idea into patent-eligible subject matter.  776 F.3d at 1346-48.  The court explained that the claims "merely

recite[d] the use of [ ] existing scanning and processing technology to recognize and store data from specific data fields" and there was "no 'inventive concept' in [the patentee's] use of a generic scanner and computer to perform well-understood, routine, and conventional activities commonly used in industry."  776 F.3d at 1348; *see also Intellectual Ventures I LLC v. Cap. One Bank (USA)*, 792 F.3d 1363, 1371 (Fed. Cir. 2015) (holding claims were not rendered patent-eligible by merely reciting "a computer database, the breakdown and organization of [] entered data according to some criteria . . . and the transmission of information derived from that entered data to a computer user, all through the use of conventional computer components, such as a database and processors, operating in a conventional manner.").

Similarly, the Patents-in-Suit merely recite the use of existing technology (*e.g.*, a processor and data repository) to perform well-understood, routine, and conventional activities commonly used in industry.  The claims recite nothing more than generic, well-understood, conventional components as a way to carry out the abstract idea of storing, managing, indexing, and/or retrieving data sets.  In fact, the common written description among the Patents-in-Suit provides that the "invention may be implemented by computers organized in a ***conventional*** distributed processing system architecture."  D.I. 1-A at 14:31-33.[4]  The written description further describes "an exemplary implementation" that "us[es] database systems such

---

[4]  Emphasis added unless stated.

as Oracle®, Microsoft SQL Server®, or MySQL" so "a user may create a class and its attributes by creating a table and constructing columns within the table." *Id.* at 4:12-16. It similarly describes other elements of the claimed invention as conventional. *See*, *e.g.*, *id.* at 7:64-65 ("State machines are a very powerful extension of ***normal*** relational database attributes or column types."); 13:45-49 ("Entries may then be made into class attribute table . . . to associate the appropriate attributes with their respective classes. This may all be done via any data insertion method available, e.g. a user interface, etc.").

Ultimately, the claims' use of a data repository and computerized components is "yet another natural consequence of carrying out the abstract idea in a computing environment and is, therefore, also insufficient to transform a patent-ineligible abstract idea into a patent-eligible invention." *Erie Indemnity*, 850 F.3d at 1329.

### B. InQuisient Fails to Plausibly Plead Indirect Infringement

The Complaint is devoid of any factual allegation that ServiceNow had any knowledge of the Patents-in-Suit or alleged infringement. Knowledge of both the Patents-in-Suit and the alleged infringement is required to state a claim for indirect infringement. *See ZapFraud, Inc. v. Barracuda Networks, Inc.*, 528 F. Supp. 3d 247, 249–250 (D. Del. 2021) (citing *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632 (2015)). This Court has emphasized that a complaint itself is insufficient to constitute "the source of the knowledge required to sustain claims of induced

infringement and willfulness-based enhanced damages"; and, in order to state a claim of willfulness and indirect infringement, a plaintiff must allege that the accused infringer obtained the requisite knowledge from a source other than the complaint. *Id.* at 250. InQuisient has failed to do so, even taking all factual allegations in the Complaint as true. This deficiency alone warrants the dismissal of InQuisient's indirect infringement claim.

The Complaint references two June 2022 letters, but InQuisient does not (and cannot) allege those letters constitute adequate notice of the alleged infringement—or were even received by ServiceNow before filing of the Complaint.[5] Compl. ¶¶ 5–6. Further, the letters do not allege infringement and, in fact, acknowledge there was no alleged infringement at least at the time of writing (*supra*, Section III). According to the Complaint, InQuisient's June 1 letter "requested" information from ServiceNow to "rule out InQuisient's infringement concerns." Compl. ¶ 5; *see also* Ex. 1. That is, InQuisient acknowledged that it had insufficient information to determine whether the ServiceNow platform practiced any patents. *Id.* The June 21 letter merely "repeat[ed] [InQuisient's] request for a response," again without any concrete infringement allegations. *Id.* ¶ 6; *see also* Ex. 2.

---

[5] In the June 21 letter, InQuisient acknowledged the possibility that the June 1 letter "was misdirected." Ex. 2. Despite InQuisient's purported attempt to "broaden[] the distribution," there is no record that anyone at ServiceNow received or was made aware of the June 21 letter before this lawsuit began.

Simply put, the letters could not have provided notice of the alleged infringement, because there was no alleged infringement at the time.    Thus, InQuisient fails to allege any facts from which knowledge of the alleged infringement may be plausibly inferred.    This deficiency is fatal to InQuisient's indirect infringement claim and warrants its dismissal.  *ZapFraud*, 528 F. Supp. 3d at 249–250; *Helios Streaming, LLC v. Vudu, Inc.*, No. 19-1792-CFC, 2020 WL 3167641, at *1 (D. Del. June 15, 2020) (dismissing indirect infringement claim because pre-suit letter "does not state that Defendant's products or actions infringe any patent").

Further, despite its broad "Prayer for Relief" for a judgment that ServiceNow has "indirectly infringe[d]" all Patents-in-Suit, InQuisient only pleads factual allegations relating to indirect infringement of the '468 patent.  Compl. ¶ 32.  The Complaint contains no factual allegations regarding indirect infringement of the '585 or '855 patents; and, thus, claim of indirect infringement of those patents should be dismissed for this additional reason.  *See id*.; *Amarin Pharma, Inc. v. Hikma Pharms. USA Inc.*, 578 F. Supp. 3d 642, 647 (D. Del. 2022) (dismissing indirect infringement claim due to failure to "plead an inducing act").

### C.    InQuisient Fails to Plausibly Plead Willful Infringement

InQuisient's claim of willful infringement is similarly deficient for failure to plead knowledge of the Patents-in-Suit.  As with indirect infringement, knowledge

of the Patents-in-Suit and the alleged infringement is required for a claim of willful infringement, and cannot be fulfilled with the filing of the Complaint alone. *Dynamic Data Techs., LLC v. Amlogic Holdings Ltd*., No. 19-1239-CFC, 2020 WL 4365809, at *5 (D. Del. July 30, 2020); *ZapFraud*, 528 F. Supp. 3d at 250.  As discussed above, the Complaint contains no factual allegation that would allow one to plausibly infer that ServiceNow had knowledge of the alleged infringement from a source other than the Complaint.  This deficiency warrants dismissal of InQuisient's claim of willful infringement and request for enhanced damages.  *Id.*; *Deere & Co. v. AGCO Corp.*, No. 18-827-CFC, 2019 WL 668492, at *6 (D. Del. Feb. 19, 2019) (dismissing willfulness claim due failure to "allege that the letter stated that (let alone explained how) [the accused products] infringe the four patents asserted . . .").

### D.    Any Amendment Would be Futile

InQuisient's indirect infringement and willfulness  claims should be dismissed with prejudice, because any amendment would be futile.  After the Complaint was filed, ServiceNow requested and obtained copies of the pre-suit letters from InQuisient's litigation counsel. Exs. 1, 2.  Both letters confirm InQuisient's failure to give ServiceNow notice of the alleged infringement before filing suit.

As described above, both letters thus confirm a lack of infringement allegations at the time, and would not have constituted notice even if received by

ServiceNow pre-suit. *See Deere*, 2019 WL 668492, at *6. Because the Complaint itself cannot be the source of knowledge for purposes of indirect and willful infringement, InQuisient cannot possibly cure the lack of notice by amending the Complaint. *ZapFraud*, 528 F. Supp. 3d at 250.

## VI.   CONCLUSION

InQuisient's Complaint should be dismissed with prejudice in its entirety.


OF COUNSEL:                                    MORRIS, NICHOLS, ARSHT & TUNNELL LLP

Diane M. Doolittle                             */s/ Jennifer Ying*
Kevin P.B. Johnson
Ray Zado                                       _____
QUINN EMANUEL URQUHART                         Jack B. Blumenfeld (#1014)
   & SULLIVAN, LLP                             Jennifer Ying (#5550)
555 Twin Dolphin Dr., 5th Floor                1201 North Market Street
Redwood Shores, CA 94065                       P.O. Box 1347
(650) 801-5000                                 Wilmington, DE 19899
                                               (302) 658-9200
Marissa R. Ducca                               jblumenfeld@morrisnichols.com
QUINN EMANUEL URQUHART                         jying@morrisnichols.com
   & SULLIVAN, LLP
1300 I Street NW, Suite 900                    *Attorneys for Defendant*
Washington, D.C. 20005
(202) 538 8000

Jodie Cheng
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600

September 12, 2022

## **WORD COUNT CERTIFICATION**

The undersigned counsel hereby certifies that the foregoing document contains 4,742 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font.  The word count includes only the body of the document.  The word count does not include the cover page, tables of contents, or the counsel blocks.

*/s/ Jennifer Ying*

_____
Jennifer Ying (#5550)

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 12, 2022, upon the following in the manner indicated:

Susan E. Morrison, Esquire                                  *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
222 Delaware Avenue, 17th Floor
Wilmington, DE  19801
*Attorneys for Plaintiff*

Frank E. Scherkenbach, Esquire                          *VIA ELECTRONIC MAIL*
Adam Kessel, Esquire
Andrew Pearson, Esquire
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA  02210
*Attorneys for Plaintiff*

Jason W. Wolff, Esquire                                      *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
12860 El Camino Real, Suite 400
San Diego, CA  92130
*Attorneys for Plaintiff*

Excylyn Hardin-Smith, Esquire                          *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
7 Times Square, 20th Floor
New York, NY  10036
*Attorneys for Plaintiff*

Adil Shaikh, Esquire                                    *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX  75201
*Attorneys for Plaintiff*


                                        */s/ Jennifer Ying*
                                        _____
                                        Jennifer Ying (#5550)