IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INQUISIENT INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 22-900 (CFC) |
| | ) | |
| SERVICENOW, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT SERVICENOW, INC.'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS**

OF COUNSEL:

Kevin P.B. Johnson
Diane M. Doolittle
Ray Zado
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Marissa R. Ducca
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538 8000

Jodie Cheng
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA  94111
(415) 875-6600

October 21, 2022

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendant*

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................1

II. ARGUMENT .........................................................................................................2

    A. The Patents-in-Suit are Ineligible Under § 101 ....................................2

        1. *Alice* Step One ............................................................................2

        2. *Alice* Step Two ............................................................................7

        3. No Factual Dispute Precludes Dismissal ....................................9

    B. InQuisient's Indirect and Willful Infringement Claims Should be Dismissed ...........................................................................................10

III. CONCLUSION ....................................................................................................11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Affinity Labs of Texas, LLC v. Amazon.com Inc.*,
 838 F.3d 1266 (Fed. Cir. 2016) ..................................................................................................2

*Amdocs (Israel), Ltd. v. Openet Telecom, Inc*,
 841 F.3d 1288 (Fed. Cir. 2016) ..................................................................................................9

*Arendi S.A.R.L. v. HTC Corp.*,
 2020 WL 7360155 (D. Del. Dec. 15, 2020) ...............................................................................7

*BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*,
 827 F.3d 1341 (Fed. Cir. 2016) ..................................................................................................9

*BSG Tech LLC v. Buyseasons, Inc.*,
 899 F.3d 1281 (Fed. Cir. 2018) ...............................................................................................5, 8

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
 927 F.3d 1306 (Fed. Cir. 2019) ................................................................................................10

*Cisco Sys., Inc. v. Uniloc 2017 LLC*,
 813 F. App'x 498 (Fed. Cir. 2020) .............................................................................................3

*ClearDoc, Inc. v. RiversideFM, Inc.*,
 2022 WL 3355960 (D. Del. Aug. 15, 2022) .............................................................................10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*,
 776 F.3d 1343 (Fed. Cir. 2014) ...............................................................................................5, 9

*Core Wireless Licensing S.A.R.L v. LG Elecs., Inc.*,
 880 F.3d 1356 (Fed. Cir. 2018) ..................................................................................................7

*Customedia Techs., LLC v. Dish Network Corp.*,
 951 F.3d 1359 (Fed. Cir. 2020) ..................................................................................................4

*Data Engine Techs. LLC v. Google LLC*,
 906 F.3d 999 (Fed. Cir. 2018) ....................................................................................................7

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
 758 F.3d 1344 (Fed. Cir. 2014) ...............................................................................................1, 5

# TABLE OF AUTHORITIES

## Cases

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ................................................................................6

*Epic IP LLC v. Backblaze, Inc.*,
    351 F. Supp. 3d 733 (D. Del. 2018) ............................................................... 9, 10

*Intellectual Ventures I LLC v. Erie Indemnity Co.*,
    850. F.3d 1315 (Fed. Cir. 2017) ............................................................................5, 6

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    2022 WL 2800861, at *8 (D. Del. June 15, 2022) .................................................7

*McRO, Inc. v. Bandai Namco Games America Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ..............................................................................9

*PersonalWeb Techs. LLC v. Google LLC*,
    8 F.4th 1310 (Fed. Cir. 2021) ..................................................................................9

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) .........................................................................4, 8

*Solutran, Inc. v. Elavon, Inc.*,
    931 F.3d 1161 (Fed. Cir. 2019) .........................................................................4, 8

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) ................................................................... 3, 4, 8

*Visual Memory LLC v. NVIDIA*,
    867 F.3d 1253 (Fed. Cir. 2017) ..............................................................................7

## Rules / Statutes

35 U.S.C. § 101 ............................................................................................. *passim*

35 U.S.C. § 284 .............................................................................................................11

I.      **INTRODUCTION**

InQuisient's Opposition (D.I. 16, "Opp") confirms all asserted claims are invalid.  The Federal Circuit mandated that "manipulat[ing] existing information to generate additional information is not patent eligible."  *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1351 (Fed. Cir. 2014).  Yet, InQuisient argues the Patents-in-Suit can purportedly survive a §101 challenge because the claims thereof purportedly "improve database systems by *manipulating data*" and "improve the way a computer *stores, manipulates, and uses data*" using "structures to *define, manipulate, and manage*" data – the very functionality that the Federal Circuit has found to be patent ineligible.  Opp. at 1, 5, 9.[1]

As the mere "manipulation" of data cannot render the claims patent eligible, InQuisient points to an "interrelated series of modules" that allegedly achieve the data manipulation (*id.* at 16), as "improvements" to the operation of computer systems.  However, InQuisient does not (and cannot) explain what such "modules" or their "interrelationships" are, without complete reliance on purely functional, result-based language.  Ultimately, the claims fail to recite any "specific, discrete implementation" or "specific means or method" required of patent-eligible subject matter.

InQuisient's claims for enhanced damages and indirect infringement similarly

---

[1]   All emphases added unless stated otherwise.

fail. InQuisient admits it did not plead any basis for enhanced damages. There is also no dispute that InQuisient failed to plead indirect infringement of the '585 and '855 patents. Moreover, InQuisient does not (and cannot) plausibly allege that ServiceNow had the requisite knowledge of alleged infringement of any Patent-in-Suit.

## II.   ARGUMENT

### A.   The Patents-in-Suit are Ineligible Under § 101

#### 1.   *Alice* Step One

InQuisient asserts the claims are patent eligible because they are "directed to an improvement in the functioning of a computer." Opp. at 7. InQuisient is wrong.[2]

***First***, what InQuisient's points to under *Alice* Step 1 as the purported technological improvements of the claims—*i.e.* a "data structure constructed from various 'modules' whose definitions and interrelationships are described … in the claims," (Opp. at 9)—are in fact abstract themselves. Indeed, the claims consist solely of functional language regarding a set of modules that are entirely defined by what each claimed module should be programmed to do, which amounts to an instruction to "apply it with a computer" to carry out the claimed functions, exactly

---

[2] In one of the cases InQuisient cites, the Federal Circuit in fact found the patent abstract and ineligible under § 101, as merely "adding conventional computer components to well-known business practices" is not such an improvement. *Affinity Labs of Texas, LLC v. Amazon.com Inc.*, 838 F.3d 1266, 1270 (Fed. Cir. 2016).

like the type of claims the Supreme Court has held to be abstract. *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017) ("Merely reciting the use of a generic computer or adding the words 'apply it with a computer' cannot convert a patent-ineligible abstract idea into a patent-eligible invention.") (quoting *Alice*).

The claims at issue recite various modules that are generally "configured" to "define," "store," "identify," and "transmit" data—without specifying how to achieve those functions. '468 Patent, cl. 1; Mot. App'x B (D.I. 12-1 at 6-7). InQuisient argues its patents are directed to improvements in database management technology because the "definitions and interrelationships" of the various modules "are described at length in the claims and specification," (Opp. at 9), but InQuisient's Complaint and the Patents-in-Suit are all silent on what the "interrelationship," "relationships," or "associations" are among these "modules." InQuisient's own description of the patents fails to specify what relationships the modules must have. *See* Opp. at 3-5.

Thus, InQuisient's claims at issue are drafted to cover computer implementations of the abstract idea of employing a database that stores, manages, indexes, and retrieves data using modules having ***any*** relationship among them, ***without regard to any specific techniques used***. *See, e.g.*, *Cisco Sys., Inc. v. Uniloc 2017 LLC*, 813 F. App'x 495, 498 (Fed. Cir. 2020) (claim that "did not specify any

- 3 -

particular metric or method" was directed to an abstract idea). Accordingly, InQuisient cannot attribute its alleged laundry list of "improvements" (Opp. at 9-11) to any specific implementation of that abstract idea, because the purported "improvements" are simply benefits of carrying out the abstract idea. *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363 (Fed. Cir. 2020) (distinguishing between "specific asserted improvement in computer capabilities" from "an abstract idea for which computers are invoked merely as a tool").

Ultimately, InQuisient's purported improvements in computer functionalities find no support in the claim language, which lacks "the specificity required to transform a claim from one claiming only a result to one claiming a way of achieving it." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018); *Two-Way Media*, 874 F.3d at 1337 (finding patent abstract because it "does not sufficiently describe how to achieve these results in a non-abstract way").

***Second***, InQuisient's assertions about alleged improvements to database technology, even if true, only go to the novelty of the alleged invention—not whether it is non-abstract—and cannot save the patents. *Customedia*, 951 F.3d at 1364 ("improvement in wholly abstract ideas" does not make a patent eligible); *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1169 (Fed. Cir. 2019) (even "novel and non-obvious" abstract ideas are ineligible). InQuisient admits the patents are directed to nothing more than a way to "interact with and manipulate the data." Opp.

at 16; *see also id.* ("the InQuisient patents improve database systems by manipulating data"); *id.* at 5 ("The new data structures . . . improve the way a computer stores, manipulates, and uses data to implement features such as workflows."). Such "a process that employs mathematical algorithms to manipulate existing information to generate additional information" does not constitute an improvement to computer technology. *Digitech Image Techs.*, 758 F.3d at 1351.

InQuisient makes no effort to distinguish *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, a similar case involving claims also directed to the abstract idea of collecting, recognizing, and storing data. 776 F.3d 1343 (Fed. Cir. 2014). InQuisient's attempt at distinguishing the most factually relevant case– *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018)–also fails.

In *BSG*, the patent was found ineligible despite purportedly claiming "an improved database system with higher quality information and better information organization," because the patent does not describe "how to construct" such a database system. *Id.* at 1289. Likewise, the present claims merely define modules in a database by functions they must be configured to achieve, without specifying how to construct any module or the database as a whole.

InQuisient's argument regarding *Intellectual Ventures I LLC v. Erie Indemnity Company* is unavailing because InQuisient's claims are even less specific than the claims found to be ineligible in that case. 850 F.3d 1315 (Fed. Cir. 2017).

In *IV*, the claims required a specific database structure (XML tags)—which InQuisient's patent claims lack. *Id.* at 1328. The Federal Circuit still rejected the patentee's reliance on the specific structure, because "the claims simply call for XML-specific tags in the index without any further detail" and fail to "focus on how usage of the XML tags alters the database in a way that leads to an improvement in the technology of computer databases." *Id.* Here, the claims not only fail to recite how the usage of any specific structure leads to improvements in computer technology, but entirely fail to recite any specific structure beyond the functional, results-based language courts frequently find to be abstract.

InQuisient's heavy reliance on *Enfish* (Opp. at 12–13) is misplaced. *Enfish* involved patents claiming a specific self-referential table for handling data, which the Federal Circuit distinguished from "**any** form of storing tabular data." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016). To illustrate this, the *Enfish* claim recited a self-referential table comprising specific structures of rows and objects, further defining how the rows and objects define information. *Id.* at 1336. Here, in contrast, each "module" is defined by generic functional language and unspecified "associations" and "relationships."

InQuisient's other cases confirm the distinction between functional, results-based claims lacking any specific technique like the ones at issue, and claims reciting specific method or architecture that constitutes improvements over conventional

technology. *See Core Wireless Licensing S.A.R.L v. LG Elecs., Inc.*, 880 F.3d 1356, 1362 (Fed. Cir. 2018) (claims recite "a particular manner of summarizing and presenting information in electronic devices"); *Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 (Fed. Cir. 2018) (claims recite "specific steps detailing the method of navigating through spreadsheet pages . . ."); *IOENGINE, LLC v. PayPal Holdings, Inc.*, 2022 WL 2800861, at *8 (D. Del. June 15, 2022) (claims recite a specific configuration of "a portable device with a processor that performs functions in response to inputs on an interface located on a separate device. . ."); *Visual Memory LLC v. NVIDIA*, 867 F.3d 1253, 1260 (Fed. Cir. 2017) ("[e]ven the broadest claim . . . require[d] a memory system with a main memory and a cache memory, where the memory system is configured by a computer to store a type of data in the cache memory b. . .."); *Arendi S.A.R.L. v. HTC Corp.*, 2020 WL 7360155, at *3 (D. Del. Dec. 15, 2020) (claim contains "specificity as the claim language found to be adequate by the Federal Circuit in cases like *Data Engine*, *Ancora*, *Core Wireless*, and *Finjan*"). InQuisient's patents do not have such specificity.

### 2.   *Alice* Step Two

While InQuisient argues that the Patents-in-Suit claim a "new data structure and the data repository with its constituent parts" (Opp. at 16), this structure and its components are based on nothing more than the abstract "modules" and "interrelationships" described above. InQuisient's argument under step two

regarding the alleged "unconventional technical solution" only goes to novelty, not patent eligibility. *Solutran*, 931 F.3d at 1169. InQuisient does not argue that implementation of the claims requires more than a generic, multi-purpose computer. *See* Opp. at 18-21.

The specification does not render its claims patent-eligible. *Two-Way Media* makes this clear: despite the specification "describ[ing] a system architecture as a technological innovation," that patentee could not overcome the fact that what was purportedly described in the specification was missing from the claims. 874 F.3d at 1138-41.

Nor do the dependent claims "add features that further bolster patent eligibility." *See* Opp. at 20. The dependent claims employ similar functional, result-based language to describe the "additional features." For example, InQuisient argues the claimed "state machine module" is an inventive concept (Opp. at 20); yet, this "module" is merely defined by functional language describing what results it should be programmed to achieve—not how to achieve them. '468 patent, cls. 2-3; '858 patent, cls. 2-3; '585 patent, cl. 2; *see also* Mot. App'x B. Such generic functional language is insufficient. *See, e.g.*, *SAP*, 898 F.3d at 1168-79; *Two-Way Media*, 874 F.3d at 1339; *BSG Tech*, 899 F.3d at 1290–91 ("If a claim's only 'inventive concept' is the application of an abstract idea using conventional and well-understood techniques, the claim has not been transformed into a patent-

eligible application of an abstract idea."). As in *Content Extraction*, while the dependent claims "may have a narrower scope than the representative claims, no claim contains an 'inventive concept' that transforms the corresponding claim into a patent-eligible application." 776 F.3d at 1349.

InQuisient's cases rely on some inventive or unconventional architecture missing from InQuisient's patents. *Amdocs (Israel), Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1303 (Fed. Cir. 2016) (the steps "all depend[ed] upon the system's unconventional distributed architecture."); *BASCOM Global Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1349–50 (Fed. Cir. 2016) (claims do not "preempt all ways of filtering content on the Internet"); *McRO, Inc. v. Bandai Namco Games America Inc.*, 837 F.3d 1299, 1315 (Fed. Cir. 2016) (claim "prevent[s] broad preemption" as it "requires that the rules be rendered ***in a specific way***: as a relationship between sub-sequences of phonemes, timing, and the weight to which each phoneme is expressed visually ***at a particular timing***").

### 3.     No Factual Dispute Precludes Dismissal

The Federal Circuit has endorsed, and courts in this District have decided, § 101 inquiries at the pleadings stage. *PersonalWeb Techs. LLC v. Google LLC*, 8 F.4th 1310, 1314 (Fed. Cir. 2021); *Epic IP LLC v. Backblaze, Inc.*, 351 F. Supp. 3d 733, 750-51 (D. Del. 2018).

InQuisient has alleged no fact that, even if accepted as true, render the claims patent-eligible. Just like the complaint in *ClearDoc, Inc. v. RiversideFM, Inc.*, InQuisient's Complaint does "not allege[] facts supporting the conclusion that the claims contain an unconventional technological solution as opposed to an abstract idea carried out with generic technology." 2022 WL 3355960, at *3 (D. Del. Aug. 15, 2022). The allegations cited in InQuisient's Opposition "regarding the prior art merely address broad features rather than technical implementations." *Id.* at *4. To the extent InQuisient alleges its claimed database is novel (*see* Opp. at 3-5), that is insufficient to preclude dismissal at this stage. *Epic IP*, 351 F. Supp. 3d at 751 (a plaintiff cannot avoid dismissal "simply by reciting in the complaint that the invention at issue is novel."). Even case law cited by InQuisient holds a complaint's allegations regarding inventiveness cannot be "divorced from" but must be "recited by the claims." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317 (Fed. Cir. 2019). InQuisient cannot make the functional, results-based claim language non-abstract through allegations not recited in the claims.

### B. InQuisient's Indirect and Willful Infringement Claims Should be Dismissed

InQuisient's Opposition confirms that its willful and indirect infringement claims should be dismissed with prejudice.

***First***, InQuisient's statement that "InQuisient did not plead willful infringement" (Opp. at 23 n.1) directly contradicts its own Prayer for Relief for "a

judgment and order that ServiceNow's infringement of the Patents-in-Suit *be found willful* and that the Court award treble damages pursuant to 35 U.S.C. § 284." Compl. at 30.  InQuisient's Opposition indicates that it requested a judgement of willfulness and treble damages in error, and concedes those claims were not sufficiently pled.

*Second*, InQuisient does not dispute that it has failed to allege indirect infringement of the '585 or '855 patents.  *See* Opp. at 22–23.  Neither does InQuisient dispute that its pre-suit letters do not allege infringement of any Patent-in-Suit.  *Id.* at 23.  Because InQuisient cannot change what its letters say, the futility of any amendment requires that these claims be dismissed with prejudice.

## III.   CONCLUSION

InQuisient's Complaint should be dismissed with prejudice in its entirety.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Jennifer Ying*

OF COUNSEL:

Kevin P.B. Johnson
Diane M. Doolittle
Ray Zado
QUINN EMANUEL URQUHART
   & SULLIVAN, LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
(650) 801-5000

Jack B. Blumenfeld (#1014)
Jennifer Ying (#5550)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
jying@morrisnichols.com

*Attorneys for Defendant*

Marissa R. Ducca
QUINN EMANUEL URQUHART
  &amp; SULLIVAN, LLP
1300 I Street NW, Suite 900
Washington, D.C. 20005
(202) 538 8000

Jodie Cheng
QUINN EMANUEL URQUHART
  &amp; SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
(415) 875-6600

October 21, 2022

## WORD COUNT CERTIFICATION

The undersigned counsel hereby certifies that the foregoing document contains 2,419 words, which were counted by using the word count feature in Microsoft Word, in 14-point Times New Roman font. The word count includes only the body of the document, headings and footnotes. The word count does not include the cover page, tables of contents and authorities, or the counsel blocks.

*/s/ Jennifer Ying*

Jennifer Ying (#5550)

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2022, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on October 21, 2022, upon the following in the manner indicated:

| | |
|---|---|
| Susan E. Morrison, Esquire<br>FISH & RICHARDSON P.C.<br>222 Delaware Avenue, 17th Floor<br>Wilmington, DE  19801<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Frank E. Scherkenbach, Esquire<br>Adam Kessel, Esquire<br>Andrew Pearson, Esquire<br>FISH & RICHARDSON P.C.<br>One Marina Park Drive<br>Boston, MA  02210<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Jason W. Wolff, Esquire<br>FISH & RICHARDSON P.C.<br>12860 El Camino Real, Suite 400<br>San Diego, CA  92130<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |
| Excylyn Hardin-Smith, Esquire<br>FISH & RICHARDSON P.C.<br>7 Times Square, 20th Floor<br>New York, NY  10036<br>*Attorneys for Plaintiff* | *VIA ELECTRONIC MAIL* |

- 15 -

Adil Shaikh, Esquire  *VIA ELECTRONIC MAIL*
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX  75201
*Attorneys for Plaintiff*

                                                                    */s/ Jennifer Ying*

                                                                 Jennifer Ying (#5550)