# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| INQUISIENT INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-900-CJB |
| | ) | |
| SERVICENOW, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Susan E. Morrison, FISH & RICHARDSON P.C., Wilmington, DE; Frank E. Scherkenbach, Adam Kessel and Andrew Pearson, FISH & RICHARDSON P.C., Boston, MA; Jason W. Wolff, FISH & RICHARDSON P.C., San Diego, CA; Excylyn Hardin-Smith, FISH & RICHARDSON P.C., New York, NY, Attorneys for Plaintiff.

Jack B. Blumenfeld and Jennifer Ying, MORRIS, NICHOLS, ARSHT & TUNNELL LLP, Wilmington, DE; Kevin P.B. Johnson, Diane M. Doolittle and Ray Zado, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Redwood Shores, CA; Marissa R. Ducca, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Washington, D.C.; Jodie Cheng, QUINN EMANUEL URQUHART & SULLIVAN, LLP, San Francisco, CA, Attorneys for Defendant.

**MEMORANDUM OPINION AND ORDER**

February 17, 2023
Wilmington, Delaware

*Christopher J. Burke*
**BURKE, United States Magistrate Judge**

As announced at the hearing on December 20, 2022, IT IS HEREBY ORDERED that the portion of Defendant ServiceNow, Inc.'s ("Defendant" or "ServiceNow") motion to dismiss (the "motion"), (D.I. 11), which argues that Plaintiff InQuisient Inc.'s ("Plaintiff" or "InQuisient") asserted United States Patent Nos. 7,979,468, 8,219,585 and 8,224,855 are directed to non-patent-eligible subject matter pursuant to 35 U.S.C. § 101 ("Section 101"), is DENIED.

Defendant's motion was fully briefed as of October 21, 2022, (D.I. 17), and the Court received further submissions regarding Section 101-related questions on December 9, 2022, (D.I. 26; D.I. 27). The Court carefully reviewed all submissions in connection with Defendant's motion, heard oral argument, and applied the relevant legal standards for review of this type of Section 101-related motion at the pleading stage, which it has previously set out in *Genedics, LLC v. Meta Co.*, Civil Action No. 17-1062-CJB, 2018 WL 3991474, at *2-5 (D. Del. Aug. 21, 2018).

The Court's Order is consistent with the bench ruling announced at the hearing on December 20, 2022,[1] pertinent excerpts of which follow:

> I'll now move on to the second case, *InQuisient, Inc., v[.] ServiceNow, Inc.*, Civil Action Number 22-900-CJB. In this case, we again have Defendant's Rule 12(b)(6) motion. Most, though not all, of the motion is premised on the [assertion] that the operative complaint should be dismissed on Section 101 eligibility grounds. I will address only those grounds now, and for reasons I[ will] explain, I will deny the motion as it relates to Section 101 for the reasons I will now set out today.
>
> Plaintiff asserts in its complaint that Defendant infringes at least Claim 1 of each of three patents, United States Patent Number 7,979,468, which I[ will] refer to as the '468 [patent]; United States Patent Number 8,219,585, which I[ will] refer to as the '585 patent; and United States Patent Number 8,224,855, which I[ will] refer

---

[1]  (*See* D.I. 33 (hereinafter, "Tr."))

2

t[o] as the '855 patent. The three asserted patents share the same title, "Database Data Dictionary." The '585 patent and the '855 patent are continuations of the '468 patent, and the three patents share the same written description.

Defendant asserts that Claim 1 of each of the asserted patents are representative of the remainder of the claims in each patent, and Plaintiff does not contest th[at]. Therefore, the Court will analyze only Claim 1 of each asserted patent, and because the Court will deny the motion [with] respect to Claim 1 of each of those patents, the Court will also deny the motion with respect to all claims in the asserted patents.

I'll now turn to the *Alice* analysis at Step 1. Defendant says the representative claims are directed to the abstract idea of "storing, managing, indexing, and retrieving data sets based on metadata or descriptions of the data."[2] The Court agrees that this is an abstract idea. Indeed, Plaintiff does not really dispute this. And the [United States Court of Appeals for the] Federal Circuit has held, in cases like *Content Extraction [&] Transmission, LLC, v[.] Wells Fargo Bank, N[at'l Ass'n]*, that the concept of "data collection, recognition, and storage," a similar concept, was an abstract idea.[3]

Plaintiff, for its part, argues that the claims, though, are not directed to this abstract idea and that Defendant has over-generalized the claims. According to [P]laintiff, the claims of the asserted patents are directed to a "data repository with a specific set of interrelated data structures [(]the modules[)] defining how that structure is implemented."[4] Thus, Plaintiff's argument goes[,] with the claims purportedly reciting "new data structures that improve the operation and efficiency of a database system," the claims are not abstract[,] but instead are directed toward a technological improvement in database management.[5]

In cases like *CardioNet, LLC, v[.] Info[B]ionic, Inc.*, the Federal Circuit has instructed [c]ourts to be careful to avoid oversimplifying a claim by looking at it generally and failing to

---

[2] (D.I. 12 at 7)

[3] *Content Extraction & Transmission LLC, v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347 (Fed. Cir. 2014).

[4] (D.I. 16 at 12)

[5] (*Id.*)

3

account for its specific requirements in Step 1.[6] For the reasons I[ will] discuss now, I think [D]efendant has oversimplified what the focus of the claims is. For that reason, the Court finds that Plaintiff has the better of the arguments at Step 1.

Looking first to the claim language itself, Claim 1 of each of the asserted patents generally claims a computerized system for manipulating data sets comprised of a processor and a data repository that processes, retrieves, and stores data contained in the data sets and one or more layers of metadata of the data in the data sets.[7] Stopping here, that does sound a lot like Defendant's asserted abstract idea[—t]hat is, storing, managing, indexing, and retrieving datasets based on metadata or descriptions in the data. But importantly, the claims do not stop there. They go on to recite what it is that makes up the claimed data repositories[—t]hat is, several different modules that are configured to store, identify, define, generate, and/or transmit various types of information.[8] These claimed modules constitute the bulk of the claims, and, as Plaintiff points out, the modules are configured such that they have relationships to one another.[9]

For example, looking to Claim 1 of the '46[8] patent, the claimed data repository contains eight modules. First, an element module that[ is] configured to store and uniquely identify a plurality of elements. Second, an element relation module configured to store one or more relationships between the element and the element module. Third, a class module configured to define at least one class of the elements and store the class. Fourth, an attribute module configured to define and store one or more attributes. Fifth, a class attribute module configured to define and store one or more class-attribute associations between at least one of the attributes in the class. Sixth, a type definition module configured to define and store one or more types of the class, the attributes related to the class, and the relationships between the elements. Seventh, a state machine module configured to store one or more state machine types associated with at least one of the elements.

---

[6] *CardioNet, LLC, v. InfoBionic, Inc.*, 955 F. 3d 1358, 1371 (Fed. Cir. 2020).

[7] (D.I. 1, ex. A (hereinafter, "'468 patent"), col. 16:13-19; *id.*, ex. B (hereinafter, "'585 patent"), col. 16:19-24; *id.*, ex. C (hereinafter, "'855 patent"), col. 16:22-26)

[8] ('468 patent, col. 16:20-41; '585 patent, col. 16:26-54; '855 patent, col. 16:28-52)

[9] (D.I. 16 at 9)

And eighth, a status module configured to store one or more statuses of each state machine.[10]

So sure, the claims certainly *involve* the concept of storing, managing, indexing, and retrieving datasets based on metadata or descriptions of the data[. B]ut Defendant's articulation of what the claims are directed to seems to skim over the modules themselves[—i.e.,] what appears to be the key aspect of the claims. For example, on page eight of its opening brief, Defendant stated that the various recited modules "merely describe groupings of metadata."[11] In that regard, it might be that Defendant intended the "based on metadata" aspect of its articulation of the abstract idea to appropriately capture the utilization and presence of these various modules.

But if so, Defendant's description of what the claims are about still seems to be selling the claim[s] short. Just simply based on the modules' prominence in the claims and the somewhat intricate way in which the modules must interrelate to one another, it seems that the particular nature of the metadata in these modules is not an *afterthought* in the claims, which is what it sounds like in Defendant's articulation of the abstract idea. Instead, it[ is] the *star* of the claims. In other words, the claim language suggests that the claims are directed to a data repository that, as Plaintiff points out on page 18 of its answering brief, is "composed of multiple substructures configured to hold particular information, which are tied to other claimed structures in a specified manner."[12]

Defendant also argued at page three of its reply brief that although Plaintiff claims that the "[relationships"] and "interrelationship[s]" of the modules are key to the improvements to computer technology advanced by the claims, that, in fact, the patents are "silent" on what the relationships are among the claimed modules.[13] But in the Court's view, that[ is] not true. The claim limitations, on their face, do not seem to be silent about what are the relationships between the modules. Instead, the claims tell us how certain modules are related to one another. For example, the state machine module is configured to store state machine types

---

[10]    ('468 patent, col. 16:20-41)

[11]    (D.I. 12 at 8)

[12]    (D.I. 16 at 18)

[13]    (D.I. 17 at 3)

5

associated with at least one of the elements[—]elements that are stored by the element module.[14]

The Court notes that today at oral argument, the parties appeared to have different views about what these claimed modules really are or consist of. Defendant, on the one hand, seemed to be suggesting that although the modules facially are required to contain different types of data, like elements or attributes or state machine types, in reality, they all simply require groupings of merely any type of metadata[. A]nd Defendant[] suggested that these modules were not actually part of the data structure, just grouping[s] of data themselves.[15] But Plaintiff's counsel argued that the modules, as their names would appear to suggest, do require utilization of different types of metadata and that a module is a portion of a data table or a data table itself[—t]hat is, a structure or type of structure.[16] At this stage of the case, without claim construction having occurred, Plaintiff's arguments as to what the claimed modules are seem plausible, so I must credit them.

At page two of its reply brief, [Defendant] also suggested that the fact that each module is defined by functional language means that the claims amount simply to instructions [to] ["]apply it with a computer["] in order to carry out the claimed functions.[17] While it is true that the claims dictate that the modules are configured to store and identify or define certain information, Defendant's argument ignores that the claims themselves[—]particularly if Plaintiff is correct about the previously referenced claim construction issue as to ["]module["—]would be directed to a new system for manipulating datasets that includes *particular modules* that must store, identify, and/or define *particular information* and that have *certain relationships to one another*. The claims, therefore, would not simply amount to instructions to store, manage, index, and/or retrieve data based on metadata or descriptions of the data on a computer, full stop. Rather, they would recite specific data structures for doing so.

Now, the patent specification, though not a model of clarity, also sheds some light on the "directed to" Step 1 inquiry. For example,

---

[14] (*See, e.g.*, '468 patent, col. 16:20-21, 37-39)

[15] (Tr. at 57-59, 63)

[16] (*Id.* at 78)

[17] (D.I. 17 at 2)

6

the abstract explains that the patents claim a computerized system for "storing, managing, indexing, interrelating, and/or retrieving data sets *in a manner independent of the data model*."[18] This suggests that the patents will be claiming a new system for managing, indexing, interrelating, and/or retrieving datasets [—t]hat is, one that is independent of the data model. The abstract then goes on to note how the patent does this[; t]hat is[,] by claiming a system that includes an element module that[ is] configured to store uniquely identified elements and an element relation module configured to show relationships between the elements and the element module[,] and then by further containing various additional types of modules. These concepts are, in turn, captured by the claims.

Turning to the written description of the asserted patents, column 1's background information section explains that at the time of the invention, a conventional data storage system would implement its own data model according to the system's user interface and business r[u]le[s] specification.[19] These prior art systems depended on a specific data model, one that the system's developers create by writing dedicated code. However, these systems were said to lack flexibility and portability.[20] The section ends with the patent stating that there is a "need for systems and method[s] that store, manage, index, interrelate, and/or retrieve data[]sets in a manner *independent of the data model*."[21] Then in the summary of the invention section, the patent describes the claimed systems and methods that are said to address this problem in some way. In doing so, the summary section pointedly notes that these systems and methods are ones containing various modules of the types that are found in the asserted representative claims at issue.[22]

Now, candidly, the patent does not, in the Court's view, understandably articulate *how* it is that a claimed system, like those in the purportedly representative claims, actually solve[s] the problems in the prior art that are called out in the background

---

[18]    (*See, e.g.*, '468 patent, Abstract (emphasis added))

[19]    (*Id.*, col. 1:20-23)

[20]    (*Id.*, col. 1:22-27)

[21]    (*Id.*, col. 1:50-52 (emphasis added))

[22]    (*See, e.g., id.*, cols. 1:56-2:12)

7

information section of the patent. Nor, in the Court's view, was that answer particularly clear after reading Plaintiff's briefing or its current operative complaint. And despite many questions here today at oral argument, the Court was left wondering about this connection between what is claimed on the one hand and how what is claimed solves the types of computer-based problems described by the patent on the other hand.[23]

This lack of clarity, if it continues, may well be harmful to [P]laintiff's case at some point in the future[. B]ut it does not affect my Step 1 decision here today. That's because all I[ am] doing at Step 1 today is asking myself, first, what is the focus of these claims, and, second, is that concept captured in the abstract idea put forward by [D]efendant?

For the reasons that I[ have] explained here today, it is not. The claim language itself and the patent specification tell us repeatedly that the focus of these patent claims is on the particular nature of the data structure at issue, including its use of particular modules that store different types of metadata that are interrelated in a particular way. Defendant's abstract idea was simply too broad. It oversimplifies the claims, so it doesn't capture this important concept.

Finally, the caselaw that the parties highlight as similar to the claims at issue also helps, at least in part, to demonstrate that Plaintiff's position appears to be the right one. For its part, Defendant asserted that the claims here were most analogous to those found to be patent eligible in *BSG Tech LLC v[.] Buy[S]easons, Inc.*,[24] a Federal Circuit case.[25] [P]laintiff says that its claims were more similar to the claims found to be patent eligible in *Enfish, LLC, v[.] Microsoft Corp.*,[26] another Federal Circuit case.[27] The Court finds that the claims are more like those in *Enfish* than those in *BSG Tech.*, which is another reason why the defendant's motion must be denied at Step 1.

---

[23]   (Tr. at 74-77, 81-84, 88-91)

[24]   *BSG Tech LLC v. BuySeasons, Inc.*, 899 F.3d 1281 (Fed. Cir. 2018).

[25]   (D.I. 26 at 1-2)

[26]   *Enfish, LLC, v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016).

[27]   (D.I. 27 at 1)

In *BSG Tech.*, the Federal Circuit affirmed the district court's determination that the patents at issue were not patent eligible. Notably, there, the district court's decision was issued after the [c]ourt accepted the plaintiff's proposed claim constructions and converted the [defendant's] motion to dismiss into a motion for summary judgment.[28] The claims at issue in that case recited methods and systems for indexing and retrieving data being posted by a plurality of users to a wide area network that entailed, as the claimed advanced over the prior art, providing the users with summary comparison usage information corresponding to previously used parameters and values for use in posting the data.[29] The Federal Circuit found that these claims were directed to the abstract idea of "considering historical usage information while inputting data."[30] The Court noted that the patentee did not purport to have invented a new database structure. Rather, the focus of the claims was guiding users by presenting summary comparison information to them before they inputted data in order to achieve more consistent item descriptions.[31] The Federal Circuit reiterated throughout the opinion that the claimed databases themselves were well known at the time of the invention.[32] While the focus of the claims would improve the quality of the information added to the database, this is not the same as improving the database's functionality. Indeed, the database would serve in its ordinary capacity of storing the resulting information, and thus the claims were unrelated to how databases function.[33]

One claim[ at] issue in *BSG Tech* recited a database system, and the patentee pointed to a limitation requiring that users can add additional parameters without modifying the predefined structure of the database as constituting an improvement in computer functionality.[34] However, the Court explained that the specification said nothing about how to construct such a database

---

[28] *BSG Tech LLC*, 899 F.3d at 1285.

[29] *Id.* at 1284.

[30] *Id.* at 1286.

[31] *Id.*

[32] *Id.* at 1286, 1287, 1288.

[33] *Id.* at 1288.

[34] *Id.* at 1289.

structure, which suggested that this feature of the claimed system was not the focus of the claim. Moreover, the patent did not suggest that conventional databases required structural modifications to add new param[e]ters.[35]

At Step 2 of the *Alice* test, the *BSG* Court explained that the only alleged unconventional feature of the claims was the requirement that the user be guided by the summary comparison usage information, which, again, simply restated the abstract idea at issue.[36] As to [the] patentee's argument there that the claims supplied an inventive concept because they required a specific database structure that did not preempt consideration of usage information while inputting data into other types of databases, the Court again explained that the claimed specific database structures were well understood and conventional, and accordingly did not supply an inventive concept.[37]

So while in *BSG Tech[.]* the claimed advance in the patents was simply having users consider certain information while inputting information into the index, here[,] in contrast[,] the focus of the claims seems to be on a data repository that includes particular data structures that have relationships among one another[—t]hat is, the particular claimed database structures are the focus of the claims. And unlike [in] *BSG Tech.*, it[ is] not clear [here] that the recited structures were well understood and conventional. As the Court has previously noted, the patent itself seems to say they were not. Indeed, the fact that the patentee obtained a patent on these claims would appear to indicate that they were not.

For this reason, the Court agrees with [P]laintiff that the claims seem more similar to those found to be patent eligible in *Enfish*, which, again, not for nothing, was [a] case where the Section 101 issue was not decided until a [] full[er] record was made on summary judgment.[38] In *Enfish*, the Federal Circuit deemed the claims at issue to be patent eligible because they recited "non[-]abstract improvements to [the] computer technology."[39] The

---

[35]    *Id.*

[36]    *Id.* at 1291.

[37]    *Id.*

[38]    *Enfish, LLC*, 822 F.3d at 1330.

[39]    *Id.* at 1335-36.

10

Court explained that "[m]uch of the advancement made in computer technology consist[s] of improvements to software, that, by their very nature, may not be defined by particular physical features[,] but rather by logical structures and processes."[40] The patent at issue in *Enfish* claimed a particular type of logical model for a computer database described as a "self-referential" table.[41] Finding that the focus of the claims was on [a] specific improvement to the way computers operate, the Court emphasized that the claims did not broadly cover any form of storing tabular data, but rather specifically taught the claim's *self-referential* [table] for a computer database.[42] This specificity was reflected in the claim language, which described in some detail the table's attributes, and also in the teaching of the specification. There, the specification emphasized how the self-referential table improved upon conventional database structures, such as by providing increased flexibility, faster search times, and smaller memory requirements. In light of what this demonstrated about the plain focus of the claims[—]that is, that the focus was on an improvement to computer functionality itself[—]the *Enfish* Court found the claims passed *Alice's* Step 1 test.[43]

As in *Enfish*, the claims here are directed to data repositories that appear to include specific sets of data structures, that is, modules, that are configured to store particular kinds of information and that have relationships with one another.

For these reasons, the Court finds that the claims at issue are not directed to the abstract idea put forward by Defendant. Therefore, Defendant's motion must be denied.

Defendant's motion also moves to dismiss Plaintiff's claims for indirect and willful infringement.[44] The Court will take that portion of the motion under advisement without argument and will issue a forthcoming order on that portion of the motion soon.

---

[40]   *Id.* at 1339.

[41]   *Id.* at 1330.

[42]   *Id.* at 1337.

[43]   *Id.* at 1339.

[44]   (D.I. 12 at 17-20)

11